

FILED

11/17/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

LOUIS PRESTA

No. 20 CR 475

Judge Thomas M. Durkin

### PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant LOUIS PRESTA, and his attorneys, THOMAS M. BREEN and ROBERT W. STANLEY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with using an interstate facility to facilitate bribery and official misconduct, in violation of Title 18, United States Code, Section 1952 (Counts One, Two, and Three); knowingly making a false statement, in violation of Title 18, United States Code, Section 1001(a)(2) (Count Four); failing to file a tax return, in violation of Title 26, United States Code, Section 7203 (Count Five); and filing a false tax return, in violation of Title 26, United States Code, Section 7206(1) (Counts Six and Seven).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with using an interstate facility to facilitate bribery and official misconduct, in violation of Title 18, United States Code, Section 1952(a)(3); and Count Six, which charges defendant with filing a false tax return, in violation of Title 26, United States Code, Section 7206(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Six of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for the forfeiture of the property described elsewhere in the Plea Agreement:

a.     With respect to Count One of the indictment:

On or about February 15, 2018, at approximately 10:32 a.m., in the Northern District of Illinois, Eastern Division, and elsewhere, defendant LOUIS PRESTA used a facility in interstate commerce, namely a cellular telephone assigned telephone number (708) XXX-4063, with the intent to promote, manage, establish, carry on, and

2

facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, bribery, in violation of 720 ILCS 5/33-1(d), and official misconduct, in violation of 720 ILCS 5/33-3(a)(4), and thereafter did perform and attempt to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### *Background*

Specifically, PRESTA was the elected Mayor of the Village of Crestwood, Illinois, the Chairperson and Treasurer of "Friends of Lou Presta," and a candidate for the Cook County Board of Commissioners. Individual A had an ownership interest in Company A, a Chicago-area company that provided red-light cameras that enabled municipalities, including Crestwood, to enforce certain traffic violations and issue traffic-violation tickets. Company A periodically sent Crestwood officials video segments of proposed traffic violations captured by Company A's red-light cameras, and Crestwood officials subsequently decided which violations to approve. Tickets for approved violations were subsequently sent to individuals responsible for the violations through the United States mail. Company A obtained a portion of the proceeds generated from the approved-and-paid-for violations, and the remainder went to Crestwood.

### *The Bribery Scheme*

As part of PRESTA's scheme, he solicited and received a cash payment from Individual A, which he was not authorized by law to accept, knowing that the cash

3

11-15-'21 13:30 FROM-                                    1-155  P0009/0023 F-044

payment was promised and tendered with intent to cause PRESTA to influence the performance of acts related to the employment and function of PRESTA as a public officer. Specifically, PRESTA told Individual A that PRESTA would ensure that the percentage of red-light traffic violations that Crestwood approved would remain high or increase in exchange for a cash payment from Individual A. As further part of the scheme, PRESTA used his cellular telephone assigned telephone number (708) XXX-4063 to conduct phone conversations with Individual A in furtherance of this illegal activity. PRESTA acknowledges that the phone conversations were transmitted through his cellular telephone, which was a facility in interstate commerce. PRESTA also communicated with Individual A via email communications and during in-person meetings.

In or around January 2018, PRESTA asked Individual A to donate to his campaign to be a Cook County Commissioner and suggested that Individual A conceal a payment made for the benefit of PRESTA by paying for an invoice to "Friends of Lou Presta" from Advertising Firm A, a Chicago-area advertising company that had prepared campaign-related materials for PRESTA. On or about January 30, 2018, PRESTA sent an email to Individual A that contained an invoice for $4,125 issued by Advertising Firm B, a second Chicago-area advertising company, to "Friends of Lou Presta."

As charged in Count One, on or about February 15, 2018, at approximately 10:32, PRESTA, who was using a cellular telephone assigned telephone number (708)

XXX-4063, spoke with Individual A, who asked PRESTA about the invoice issued by Advertising Firm B that PRESTA had previously sent. PRESTA responded, "I thought that maybe you were worried about giving me money. I thought maybe you could pay part of a bill there."

The following day, PRESTA met with Individual A, who confirmed that he would give PRESTA cash to pay the invoice issued by Advertising Firm B and asked PRESTA to ensure that the percentage of red-light camera traffic violations Crestwood issued with Company A's cameras "creep up higher." PRESTA agreed to do so.

On or about February 27, 2018, PRESTA had another telephone call with Individual A. During that call, PRESTA updated Individual A on the higher percentage of red-light traffic violations that Crestwood approved the previous week and said "we're starting to get the numbers again ... you got a new Sheriff in town." The following day, February 28, 2018, PRESTA again spoke with Individual A. During the call, PRESTA said that he needed to raise money for his campaign and made plans with Individual A to meet the following week.

On or about March 5, 2018, PRESTA met with Individual A, and the two discussed the percentage rate of approved red-light traffic violations in Crestwood. During the meeting, Individual A confirmed that he would provide PRESTA with $5,000 in cash and asked PRESTA for help obtaining a second red-light camera location in Crestwood. The following day, PRESTA sent to Individual A an email that

showed the number and percentage of approved red-light camera violations in Crestwood during the prior week.

On March 7, 2018, PRESTA met with Individual A in Crestwood. During the meeting, Individual A gave PRESTA an envelope containing $5,000 in cash and asked for PRESTA's help obtaining a second red-light camera location in Crestwood. PRESTA said that he would "do my best for you." Later in the meeting, when Individual A asked PRESTA to keep the fact that Individual A had paid the $5000 to PRESTA just between the two of them, PRESTA responded, "Oh, no. I'm glad nobody else is here ... I can't even put it in the bank." Following the payment, PRESTA continued forwarding to Individual A emails showing the weekly number and percentage of approved red-light camera violations in Crestwood.

On or about September 26, 2019, PRESTA was interviewed by agents from the Federal Bureau of Investigation and the Internal Revenue Service. During the interview, PRESTA attempted to conceal his receipt of the $5,000 bribe payment from Individual A by making numerous false statements to the federal agents. Specifically, PRESTA said that he had never asked for campaign contributions from Company A or Individual A. PRESTA also said that he did not receive $5,000 from Individual A on March 7, 2018, and when shown a recording of himself accepting an envelope containing $5,000 from Individual A on March 7, 2018, he stated that there was no money in the envelope.

11-15-'21 13:30 FROM-                                          1-155   P0007/0023 F-044

    b.     With respect to Count Six of the indictment:

On or about October 16, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, LOUIS PRESTA willfully made and subscribed, and caused to be made and subscribed, a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2015, which return was made under penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that said return reported on Line 22 that the total income was $12,000, when PRESTA knew that the total income substantially exceeded that amount, in violation of Title 26, United States Code, Section 7206(1).

Specifically, in 2015, PRESTA had total income of at least $98,982, but nevertheless reported on his 2015 federal income tax return that his total income was $12,000. PRESTA caused the tax return, which was made under the penalty of perjury, to be filed with the Internal Revenue Service, knowing that his tax return contained false information, causing losses to the IRS of at least $28,573 and to the Illinois Department of Revenue of at least $3,031.

PRESTA also caused a materially false tax return to be filed for tax year 2018 in which he willfully underreported $8,000 in income he received, causing losses to the IRS of at least $1,032 and to the Illinois Department of Revenue of at least $396. In addition, PRESTA willfully failed to file an income tax return for the calendar year

7

11-15-'21 13:30 FROM-                                                    T-155  P0008/0023 F-044

2014, knowing that he had a total income of at least $192,713, causing losses to the IRS of at least $37,702.

<u>Maximum Statutory Penalties</u>

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.    Count Six carries a maximum sentence of 3 years' imprisonment. Count Six also carries a maximum fine of $100,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Six, the judge also may impose a term of supervised release of not more than one year.

c.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 8 years' imprisonment. In addition, defendant is subject to a total maximum fine of $350,000, mandatory costs of prosecution, a period

8

11-15-'21 13:31 FROM-                                              T-155  P0009/0023 F-044

of supervised release of three years, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most-effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

9

Guidelines Manual currently in effect, namely, the November 2018 Guidelines Manual.

      b.     **Offense Level Calculations.**

### Count One

      i.     Pursuant to Guideline §2E1.2(a), the base offense level is the offense level applicable to the underlying unlawful activity. Pursuant to Application Note 2 to Guideline § 2E1.2(a)(2), because the underlying unlawful conduct violates state law, that is, the Illinois bribery (720 ILCS 5/33-1(d)) and official misconduct (720 ILCS 5/33-3(a)(4)) statutes, the offense level corresponding to the most analogous federal offense should be used. The guideline provision applicable to the most analogous federal offense is Guideline § 2C1.1. The base offense level is therefore 14 pursuant to Guideline § 2C1.1(a)(1) because defendant was a public official.

      ii.     The offense level is increased by 4 levels pursuant to Guideline § 2C1.1(b)(3) because the offense involved an elected official.

### Count Six and Relevant Conduct

      iii.     The base offense level is 14, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(E), because the tax loss was more than $40,000.

### Grouping

      iv.     Pursuant to Guideline § 3D1.2, the offenses are not grouped and should be treated as separate groups. The group with the highest offense

11-15-'21 13:31 FROM-                                                          I-155  P0011/0023 F-044

level, Count One, has an offense level of 18, and the next group, Count Six, has an

offense level of 14. Pursuant to Guideline § 3D1.4(a), Count One receives one Unit

and Count Six receives one Unit because it is one to four levels less serious. As a

result, the offense level increases by two levels. Therefore the offense level is 20.

      v.     Defendant has clearly demonstrated a recognition and

affirmative acceptance of personal responsibility for his criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and

if defendant continues to accept responsibility for his actions within the meaning of

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction

in the offense level is appropriate.

      vi.     In accord with Guideline § 3E1.1(b), defendant has timely

notified the government of his intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the Court to allocate its

resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court

determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government

will move for an additional one-level reduction in the offense level.

      c.     **Criminal History Category.** With regard to determining

defendant's criminal history points and criminal history category, based on the facts

now known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

        d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

        e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and they are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation, that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11-15-21 13:31 FROM-                                                I-155  P0013/0023 F-044

10.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B) and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.  Each party is free to recommend whatever sentence it deems appropriate.

12.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.  The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $5,000 as compensation for government funds that defendant received during the investigation of the case.

11-15-'21  13:31  FROM-                                              1-155   P0014/0023  F-044

14.     Regarding restitution, defendant agrees to pay restitution to the United States Treasury arising from the offense conduct and relevant conduct set forth above, totaling $72,307, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant further understands that the Internal Revenue Service will use the amount of restitution ordered as a basis of a civil assessment under Title 26, United States Code, Section 6201(a)(4). Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in this criminal case.

15.     Defendant further agrees to pay restitution to the Illinois Department of Revenue arising from the offense conduct and relevant conduct set forth above, totaling $3,427, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant understands that the amount of tax loss as calculated by the Illinois Department of Revenue may exceed the amount of tax due as calculated for restitution in this criminal case.

16.     Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

20.    Defendant understands that by pleading guilty, he will be subject to forfeit to the United States all right, title, and interest that he has in any property, constituting proceeds obtained, directly or indirectly, as a result of the offense, and any property involved in the offense.

21.    Defendant agrees to forfeiture of the following specific property to the United States: a money judgment in the amount of $5,000.  In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. Defendant

understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

#### Nature of Agreement

23.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 475.

24.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

16

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

25.    Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

**Waiver of Rights**

26.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

17

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses, and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

18

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.    With respect to forfeiture, defendant understands that if the case was tried before a jury, he would have the right to retain the jury to determine whether the government has established the requisite nexus between the defendant's offense and any specific property alleged to be subject to forfeiture.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and he may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

27.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained to him those rights, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the

19

nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

29.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income-tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income-tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy

of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

31.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).    In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his

21

spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

33.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

34.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

11-15-'21 13:32 FROM-                                         T-155  P0023/0023 F-044

limitations between the signing of this Agreement and the commencement of such prosecutions.

36.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void, and neither party will be bound to it.

37.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    11/17/2021

AMARJEET BHACHU    *Digitally signed by AMARJEET BHACHU*
Date: 2021.11.16 22:57:10 -06'00'

JOHN R. LAUSCH, JR.
United States Attorney

JAMES DURKIN    *Digitally signed by JAMES DURKIN*
Date: 2021.11.16 14:01:34 -06'00'

CHRISTOPHER J. STETLER
JAMES P. DURKIN
Assistant U.S. Attorney

LOUIS PRESTA
Defendant

THOMAS M. BREEN
ROBERT W. STANLEY
Attorney for Defendant

23