UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 475 |
| v. | Judge Thomas M. Durkin |
| LOUIS PRESTA | |

### MEMORANDUM OPINION AND ORDER

Louis Presta filed a motion for compassionate release pursuant to 18 U.S.C. § 3582. R. 68. The Court entered an order granting that motion on September 29, 2022. R. 93. This opinion details the reasons justifying that order.

### Background

Presta served as the Mayor of Crestwood, Illinois from 2013 to 2021. On August 6, 2020, he was indicted on charges that he took a $5,000 bribe from a representative of a Chicago-area red-light camera company that provided such services to Crestwood. On November 17, 2021, Presta pled guilty to one bribery charge, as well as a charge of tax evasion. On April 25, 2022, the Court sentenced him to a term of imprisonment of one year and one day and ordered his surrender by June 27, 2022.

Presta's health was a significant concern for the Court at sentencing, and was the primary reason the Court imposed a below-Guidelines sentence. The Court received a letter from Presta's physician explaining that Presta suffered from a variety of medical conditions, including among others: hypertension; coronary artery disease, necessitating a stent placement; type 2 diabetes; a gastro-intestinal bleed requiring transfusions; peptic ulcer disease; congestive heart failure; and depression.

Additionally, Presta contracted pneumonia in July 2021 and "his lung function has not returned to his baseline." R. 71.

The Court provided this letter to the Bureau of Prisons seeking a response as to the BOP's ability to treat this combination of conditions. The BOP's response stated:

> As long as this individual is not acutely decompensating at present, meaning showing new or worsening [symptoms] at a rapid pace leading to or requiring emergency room hospitalization, then we can care for him. His primary care doctor will have to closely manage his medications.

R. 68-6 at 6 (19:5-10).

Presta's condition worsened immediately upon his imprisonment. Four days after arriving at the prison, Presta was taken to the emergency room for evaluation of dizziness, severe weakness, vertigo, and nausea. *See* R. 72 at 34-42. Presta remained in the hospital for three days. *Id.* at 28. Chest x-rays revealed a nodule in Presta's lung. *Id.* at 149.

On July 8, 2022, Presta was again taken to the hospital where he was administrated intravenous fluids to address dehydration. *Id.* at 11-16. Tests revealed abnormally high creatine levels in Presta's kidneys, which the doctor attributed to his need for diuretics in combination with having to climb stairs to reach his third-floor cell and a lack of air conditioning in his unit.

The doctor also recommended that Presta use a wheelchair because Presta suffers from osteoarthritis of the knees and no longer receives injections to improve his mobility. However, the prison's elevator is broken. *Id.* at 27

2

On July 18 and 28, 2022, Presta complained of stomach pain. This was attributed to the prison not providing him with a diabetic diet and changes in his diabetes medication. *See id.* at 5-8.

Upon the filing of Presta's motion, the Court communicated with Presta's treating physician at the prison. That doctor explained that the prison medical services had the ability to treat Presta's conditions but that his condition could continue to deteriorate. The doctor also noted that since entering prison, Presta has been prescribed an antidepressant to treat clinical depression.

After speaking with Presta's treating physician, the Court appointed an independent medical expert to review Presta's records. *See* R. 83. Dr. Robert S. Golden issued a written report after reviewing Presta's medical records and interviewing with Presta's treating physician at the prison. *See* R. 90. Dr. Golden's report reviews Presta's medical history and his recent health episodes in prison. Dr. Golden notes that Presta's treating physician believes that despite the prison's ability "to meet Mr. Presta's medical needs in general," that Presta "will likely continue to do worse as times passes." *See* R. 90 at 2. The treating physician expressed concerned that Presta's health will deteriorate to such an extent while he is incarcerated that he will be unable to recover his previous level of health upon release. *Id.* For these reasons, Dr. Golden believes that "serious consideration should be given to an earlier release for Mr. Presta." *Id.*

## Analysis

"Section 3582(c)(1) permits a district judge to release a prisoner (subject to revised terms of supervised release) if the judge finds 'extraordinary and compelling reasons' for that step, and the judge also has considered any applicable policy statement of the Sentencing Commission and reviewed the criteria of § 3553(a) 'to the extent that they are applicable.'" *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). "Only after finding an extraordinary and compelling reason for release need the judge, as part of exercising the discretion conferred by the compassionate release statute . . . consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.*[1]

## I. Extraordinary and Compelling Reasons

The Seventh Circuit has held that the Sentencing Commission's policy statement regarding reduction in term of imprisonment is not "applicable" to a prisoner's request (as opposed to a request from a warden) and so does not "curtail a district judge's discretion." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Nevertheless, the Seventh Circuit also held that the policy statement provides "a working definition of 'extraordinary and compelling reasons,'" such that it can "guide discretion without being conclusive." *Id.* And "a judge who strikes off on a

---

[1] The parties do not dispute that Presta has met the statutory exhaustion requirement.

4

different path risks an appellate holding that judicial discretion has been abused." *Id.*

With this warning in mind, the Court notes that the policy statement explains that an "extraordinary and compelling reason" for early release can be found where "the defendant is . . . experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. 1B1.13, Commentary.

Presta is 71-years-old and his health conditions are at least partially caused by and exacerbated by his advanced age. Any one of Presta's conditions standing alone likely would be an insufficient basis for his early release. But the combination of a variety of cardiovascular ailments, kidney disease, osteoarthritis, and clinical depression, among others, has compounded and advanced his declining health.

This decline has accelerated since Presta surrendered. He has been taken to the hospital at least twice, and his kidney function has worsened. The doctors who have examined him have found that the prison's lack of air conditioning and a consistently malfunctioning elevator exacerbate Prest's cardiovascular and osteoarthritis conditions. This decline in physical health has impacted Presta's ability to care for himself in that he now must use a wheelchair.

Most significantly, Presta's previous diagnosis of depression has deepened in prison to a clinical level requiring medication. His treating physician at the prison believes that Presta's declining mental health will contribute to and exacerbate his

physical decline such that he will be unable to maintain a level of physical functioning while in prison that will enable him to recover to his previous health levels upon release. Dr. Golden's independent analysis and evaluation confirmed this poor prognosis.

Malingering is always a concern when an inmate seeks release for health reasons. Neither the treating physician not Dr. Golden indicated that was true of Presta. Absent a professional medical opinion to the contrary, the Court must trust that Presta's poor health is real.

The Court finds this level of decline in physical and mental health to be an extraordinary and compelling reason for early release. Neither Presta's treating physician at the prison nor Dr. Golden expect Presta to recover from his current trajectory of declining heath if he remains incarcerated. That is an appropriate reason to release him now.

## II.    Factors under 18 U.S.C. § 3553(a)

The Court has "broad discretion" in weighing the § 3553(a) factors. *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 09 CR 206 (N.D. Ill. June 19, 2020), R. 180 at 6.

Section 3553(a)(2)(D) directs the Court to consider how the defendant will be provided with "medical care . . . in the most effective manner." For the reasons discussed above, the prison is unable to maintain Presta's health. This strongly counsels in favor of his early release.

The circumstances of the offense and Presta's personal characteristics do not impose a barrier to release. *See id.* § 3553(a)(2)(C) ("The Court . . . shall consider . . . the nature and circumstances of the offense and history and characteristics of the defendant[.]"). Presta's offenses were non-violent. And his crimes caused losses to the public as a whole, rather than targeting particular individuals. Presta has no prior criminal history, and his personal history is characterized by public service. His crimes were borne of the power with which he was entrusted. His breach of that trust makes it unlikely that he will wield such authority again. And his declining physical and mental health makes it nearly impossible. *See id.* § 3553(a)(2)(C) ("to protect the public from further crimes of the defendant").

Presta's sentence, however, was certainly warranted to address the scourge of public corruption in this region. *See id.* § 3553(a)(2)(A) ("to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense"); *id.* § 3553(a)(2)(B) ("to afford adequate deterrence to criminal conduct"). The Court described the seriousness of such crimes during Presta's sentencing hearing. But Presta's early release will not undermine the deterrent effect of his sentence. Presta specifically, has already lost his power and reputation and he has felt the impact of imprisonment on his personal well-being. Presta's early release also does

not undermine general deterrence to public corruption. Presta's indictment, conviction, and imprisonment are sufficient general deterrence. His early release for health conditions that are particular to him personally, does not decrease the deterrent effect on younger and healthier public officials.

Presta's sentence of a year and a day was below Guidelines. *See id.* § 3553(a)(4) ("the kinds of sentence and the sentencing range"). But this reflected his health issues, the severity of his crimes, his otherwise good character, and his lack of a prior criminal record. Other public corruption defendants have received longer sentences, but those sentences are in accordance with the specific facts of those cases. Presta's early release does not alter the significance of his original sentence. *See id.* § 3553(a)(6) ("to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes"). Moreover, Presta will be subject to home confinement for what would have been the length of his period of incarceration. His will also still be subject to a period of supervised release thereafter and responsible for restitution according to the terms of the Court's original sentence. His early release from prison, intended to hopefully stabilize his health, does not absolve Presta of his crimes and the other forms of punishment imposed by the Court.

The Court does not make this decision lightly. The Court has denied many compassionate release motions for a variety of reasons. This order should not be seen as rethinking of the need for incarceration should the facts support it. Incarceration certainly was necessary here. And Presta's release does not change that original calculus. But singularly unique circumstances have arisen since Presta's

8

incarceration making his release from prison appropriate. The sentence previously imposed was not meant to effectively be a death sentence or one where Presta's life expectancy would be greatly diminished. Presta's release is simply a recognition that subjecting him to conditions that increase the likelihood that his health will continue to seriously decline is not just.

### Conclusion

For these reasons, the Court entered the following order on September 29, 2022:

> On September 28, 2022, Dr. Robert S. Golden submitted a report to the Court [90] regarding the health of Defendant Louis Presta. Dr. Golden reviewed Defendant's medical records and consulted with Defendant's treating physician at FMC Lexington. Upon consideration of this report, the Court grants Defendant's motion [68] for sentence reduction pursuant to 18 USC 3582(c)(1)(A). The Court reduces the prison sentence for Defendant Louis Presta to time served and orders that Defendant Louis Presta be released immediately from the custody of the Bureau of Prisons. Defendant Presta s period of supervised release will begin upon his release from the custody of the Bureau of Prisons. The sentence is modified such that Defendant Presta should serve his supervised release on home confinement until what would have been his release date from prison of April 18, 2023. All other aspects of his sentence remain in place.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 7, 2022

9